In the MATTER OF JUDICIAL DISCIPLINARY PROCEEDINGS AGAINST the Honorable Michael J. GABLEMAN

WISCONSIN JUDICIAL COMMISSION,
Complainant,

v.

The Honorable Michael J. GABLEMAN,
Respondent.

Supreme Court

*No. 2008AP2458–J. Oral argument April 16, 2010.
—Decided June 30, 2010.*

2010 WI 62

(Also reported in 784 N.W.2d 631.)

For the complainant there were briefs and oral argument by *James C. Alexander and the Judicial Commission*, Madison.

For the respondent there was a brief by *Eric M. McLeod and Michael Best & Friedrich LLP*, Madison, and *James Bopp, Jr., Anita Y. Woudenberg, and Bopp, Coleson & Bostrom*, Terre Haute, Ind. and oral argument by *Eric M. McLeod.*

MEMORANDUM DECISION OF
JUSTICE DAVID T. PROSSER,
JUSTICE PATIENCE DRAKE ROGGENSACK
AND JUSTICE ANNETTE KINGSLAND ZIEGLER

¶ 1. Justice David T. Prosser, Justice Patience Drake Roggensack and Justice Annette Kingsland Ziegler:

The court is at an impasse. Three members of the court, Justice Prosser, Justice Roggensack and Justice Ziegler, agree with the recommendation of the three-judge Judicial Conduct Panel (Panel) that the Wisconsin Judicial Commission's (Commission) complaint against Justice Michael J. Gableman must be dismissed. We agree with the Panel's recommendation because after conducting an independent review of the record and considering the arguments of counsel, we have concluded that the Commission failed to establish, by evidence that is clear, satisfactory and convincing, that Justice Gableman violated Supreme Court Rule 60.06(3)(c).

¶ 2. The campaign advertisement that gave rise to the Commission's complaint against Justice Gableman and the governmental rule, SCR 60.06(3)(c), by which the Commission seeks to punish Justice Gableman for that advertisement must be examined according to the commands of the First Amendment. As the United States Supreme Court has explained, the First Amendment applies to judicial elections and to canons of judicial conduct that states seek to apply to candidates in judicial elections. *Republican Party of Minn. v. White*, 536 U.S. 765, 788 (2002). We acknowledge that the advertisement run by Justice Gableman's campaign committee was distasteful; however, the First Amendment prevents the government from stifling speech, even when that speech is distasteful. *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 380, 391 (1992). The United States Supreme Court has established the parameters of the First Amendment's protections of campaign speech that we follow in our decision below.

¶ 3. In order to meet its burden of proof under Wis. Stat. § 757.89, the Commission must persuade at least four justices, by clear, satisfactory and convincing evi-

dence, that the advertisement by Justice Gableman's campaign committee violated SCR 60.06(3)(c). The Commission has failed to do so. Accordingly, we anticipate that the Commission, or the Commission and Justice Gableman together, promptly will file a motion to dismiss the complaint against Justice Gableman.[1]

---

[1] Chief Justice Abrahamson, Justice Bradley and Justice Crooks would like to remand the complaint for a hearing before a jury panel that the Commission never requested. (One could interpret their writings as actually remanding the matter for a jury trial. *See* writings of Chief Justice Abrahamson, Justice Bradley and Justice Crooks, 2010 WI 61, ¶ 105 [hereinafter the Abrahamson writings]. However, when the court is sitting six, it takes the affirmative vote of four justices to make any type of court order, including a remand. There are not four votes to remand.)

They assert their suggestion of a jury panel is necessary to resolve the court's impasse. Abrahamson writings, ¶ 16. Generally, when the court reaches an impasse, the decision immediately preceding our review is affirmed. *See, e.g., Hornback v. Archdiocese of Milwaukee,* 2008 WI 98, ¶ 5, 313 Wis. 2d 294, 752 N.W.2d 862. Our impasse here could be resolved by adopting the recommendation of the three-judge panel and dismissing the complaint.

The Abrahamson writings do not choose this usual mode of resolving an impasse because they do not like the result. However, their attempt at a second trial is wholly without merit. Any request for a jury· panel must have been made *before* the complaint was filed. Wis. Stat. § 757.87(1). Here, pursuant to § 757.87(1), the Commission chose to have the Wis. Stat. § 757.89 hearing before a panel of three court of appeals judges. The Panel conducted the § 757.89 hearing the Commission requested. The Panel that conducted the hearing made findings of fact, conclusions of law and the recommendation to dismiss the complaint against Justice Gableman. There is no availability of a second hearing on this complaint. The Abrahamson writings omit words from § 757.87(1) in an attempt to support the writings' position. For further discussion of these omissions, *see infra* note 24.

## I. BACKGROUND

¶ 4. This action began on October 7, 2008, when the Commission filed a complaint alleging that it had found probable cause to believe that then-Judge Gableman willfully violated SCR 60.06(3)(c) of the Wisconsin Code of Judicial Conduct and thereby engaged in judicial misconduct as defined by Wis. Stat. § 757.81(4)(a) (2007–08).[2] The Commission alleged that the violation of SCR 60.06(3)(c) occurred in a television advertisement that then-Judge Gableman's campaign committee ran during the course of his campaign for election to the Wisconsin Supreme Court.[3] The Commission alleged that the television advertisement "directly implied and was intended to convey the message that action or conduct of Louis Butler enabled or resulted in [Reuben] Mitchell's release and Mitchell's subsequent commission of a criminal molestation."[4]

¶ 5. Justice Gableman timely answered the complaint and raised affirmative defenses. Thereafter, Justice Gableman moved the three-judge panel for summary judgment dismissing the complaint. The Commission agreed that summary judgment was an appropriate procedure to use in the Panel's recommendation to the Supreme Court because the material facts were not disputed.[5] The Panel accepted submissions of fact from

---

[2] Commission compl. ¶ 16.

Wisconsin Stat. § 757.81(4)(a) (2007–08) provides that it is judicial misconduct to commit a "willful violation of a rule of the code of judicial ethics." All further references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

[3] Commission compl. ¶¶ 6–15.

[4] *Id.*, ¶ 11.

[5] Judicial Conduct Panel Decision, 4 n.4 [hereinafter Panel Decision].

the parties, accepted briefs from the parties and held a hearing prior to making its own findings of fact upon which its recommendation relied. The Panel found:

1. At all times material to the Commission's complaint, the Honorable Michael J. Gableman was a circuit court judge for Burnett County, Wisconsin.

2. At all times material to the Commission's complaint, Justice Gableman was a candidate for the office of Wisconsin Supreme Court justice and thus was a "candidate" for judicial office pursuant to SCR 60.01(2), Wisconsin Code of Judicial Conduct. (Footnote omitted.)

3. During the campaign, advisors to Justice Gableman told him that a third-party political group had released an advertisement in support of Justice Butler that suggested that Justice Gableman had "purchased his job," was a "substandard judge," and had "coddled child molesters." The advisors believed that the advertisement was very damaging to Justice Gableman's campaign and that Justice Gableman needed to respond with an advertisement that focused on the comparative backgrounds of the two candidates, emphasizing Justice Gableman's judicial philosophy and his experience as a prosecutor compared to Justice Butler's experience as a criminal defense attorney and his willingness to represent and find legal loopholes for criminal defendants.

4. Justice Gableman's advisors wanted to air a responsive advertisement as soon as possible, and the advertisement that underlies this complaint was presented to Justice Gableman for his review.

5. Justice Gableman personally reviewed both the audio and video of the advertisement before its release. Justice Gableman was not pleased with the tone of the advertisement and he delayed the release of the advertisement while he sought to verify the accuracy of its contents.

6. As part of that effort, Justice Gableman became familiar with the decisions of the court of appeals and

supreme court in Reuben Lee Mitchell's appeal, *State v. Mitchell*, 139 Wis. 2d 856, 407 N.W.2d 566 (Ct. App. 1987) (unpublished slip op.), *reversed, State v. Mitchell*, 144 Wis. 2d 596, 424 N.W.2d 698 (1988), Justice Butler's arguments made during his representation of Mitchell, and Mitchell's subsequent criminal conduct and conviction.

7. Justice Gableman ultimately approved the advertisement as it had been originally presented to him.

8. On or about March 14, 2008, Justice Gableman published and released a television advertisement supporting his candidacy for the supreme court against then-incumbent Justice Butler. The audio text of the advertisement is as follows:

> Unbelievable. Shadowy special interests supporting Louis Butler are attacking Judge Michael Gableman. It's not true!

> Judge, District Attorney, Michael Gableman has committed his life to locking up criminals to keep families safe—putting child molesters behind bars for over 100 years.

> Louis Butler worked to put criminals on the street. Like Reuben Lee Mitchell, who raped an 11–year-old girl with learning disabilities. Butler found a loophole. Mitchell went on to molest another child.

> Can Wisconsin families feel safe with Louis Butler on the Supreme Court?

An electronic copy of the advertisement is Exhibit A to the Commission's complaint.

9. The purpose of the advertisement was to compare and contrast the background, qualifications, and experience of Justice Gableman with the background, qualifications, and experience of Justice Butler.

10. Justice Butler had been an appellate state public defender from 1979 to 1992. As part of that

636

employment, he represented Reuben Lee Mitchell, from 1985 to 1988, in Mitchell's appeal from a conviction of first-degree sexual assault of a child. The advertisement refers to Butler's representation of Mitchell.

11. One of the issues raised by Justice Butler in Mitchell's appeal concerned the circuit court's admission of evidence that the victim had been a virgin, evidence that Butler argued should have been excluded under the rape-shield law, Wis. Stat. § 972.11(2)(b) (1985–86). The court of appeals agreed with Butler and reversed Mitchell's conviction.

12. The State sought and the supreme court accepted review of the court of appeals' decision. The supreme court agreed with the court of appeals that evidence of the victim's virginity should have been excluded pursuant to the rape-shield law. The supreme court, however, held that the error was harmless and, therefore, reversed the court of appeals decision. Mitchell's judgment of conviction and sentence were reinstated.

13. Mitchell was not released from prison during the pendency of his appeal. Because the judgment of conviction was ultimately upheld by the supreme court, Mitchell remained in prison as sentenced by the circuit court.

14. Mitchell was released from prison on parole in 1992.

15. In 1995, Mitchell was convicted of second-degree sexual assault of a child.

16. Nothing that Justice Butler did in the course of his representation of Mitchell caused, facilitated, or enabled Mitchell's release from prison in 1992.

17. Nothing that Justice Butler did in the course of his representation of Mitchell had any connection to Mitchell's commission of a second sexual assault of a child.

18. The statement in the advertisement, "Louis Butler worked to put criminals on the street" is true. As a criminal defense attorney, Justice Butler appropriately assisted accused persons, whether they were innocent or guilty, in lessening or defeating the criminal charges lodged against them.

19. The statement in the advertisement describing Mitchell's 1985 crime, "Reuben Lee Mitchell . . . raped an 11-year-old girl with learning disabilities" is true.

20. The statement in the advertisement, "Butler found a loophole," is true. In Mitchell's appeal, Justice Butler successfully argued that the rape-shield law, a law designed to protect sexual assault victims, had been violated, an argument that inured to Mitchell's benefit.

21. The statement in the advertisement, "Mitchell went on to molest another child," is true.

## II. DISCUSSION

### A. Standard of Review

¶ 6. We review the findings of fact, conclusions of law and recommendation of the Panel pursuant to Wis. Stat. § 757.91.[6] *In re Disciplinary Proceedings Against Laatsch,* 2007 WI 20, ¶ 1, 299 Wis. 2d 144, 727 N.W.2d 488. We interpret and apply SCR 60.06(3)(c) independently of the Panel, as questions of law, but benefitting from the Panel's discussion. *Filppula-McArthur v. Halloin,* 2001 WI 8, ¶ 32, 241 Wis. 2d 110, 622 N.W.2d 436.

---

[6] Wisconsin Stat. § 757.91 provides in relevant part:

Supreme court, disposition. The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct . . . . The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

Whether the Commission has met its burden under Wis. Stat. § 757.89, to prove the allegations in its complaint "to a reasonable certainty by evidence that is clear, satisfactory and convincing," is a question of law for our independent review. *See Seraphine v. Hardiman,* 44 Wis. 2d 60, 64–65, 170 N.W. 739 (1969).

¶ 7. Neither party contends that the Panel's findings of fact should be overturned or supplemented. Rather, the Commission contends that the application of SCR 60.06(3)(c) to the facts found by the Panel prove that Justice Gableman violated SCR 60.06(3)(c). Justice Gableman contends that when SCR 60.06(3)(c) is interpreted and applied to the campaign speech at issue here in a manner that does not contravene the First Amendment of the United States Constitution, no violation of SCR 60.06(3)(c) occurred. The interpretation and application of SCR 60.06(3)(c) under constitutional standards present questions of law that we review independently of the Panel's determination. *State v. Brienzo,* 2003 WI App 203, ¶ 9, 267 Wis. 2d 349, 671 N.W.2d 700. While the Panel's recommendations are not binding on this court, they "are entitled to some deference." *In re Complaint Against Seraphim,* 97 Wis. 2d 485, 513, 294 N.W.2d 485 (1980).

## B. The First Amendment

¶ 8. The advertisement that forms the basis for the Commission's complaint was run during the course of a campaign for political office. To consider the advertisement in the context in which it was distributed, we first interpret SCR 60.06(3)(c) consistent with the commands of the First Amendment, and then we apply that interpretation to the advertisement itself. We begin with foundational First Amendment principles.

## 1. General principles

¶ 9. The First Amendment to the United States Constitution provides that "Congress shall make no law . . . abridging the freedom of speech."[7] As a general matter, this means that the First Amendment prohibits government restrictions on speech "because of its message, its ideas, its subject matter, or its content." *Ashcroft v. Am. Civil Liberties Union,* 535 U.S. 564, 573 (2002) (internal quotes and citation omitted). Time and again the United States Supreme Court has held that regulations authorizing the government to restrain or suppress speech and to prosecute violations of government-imposed regulations restraining speech are disfavored due to the protections accorded by the First Amendment. *Thomas v. Collins,* 323 U.S. 516, 530 (1945); *Buckley v. Valeo,* 424 U.S. 1, 17 (1976); *Fed. Election Comm'n v. Wis. Right to Life, Inc.,* 551 U.S. 449, 469 (2007).

¶ 10. There are limited, permitted exceptions to the general prohibition on governmental regulations of speech. *See, e.g., United States v. Williams,* 553 U.S. 285, 288–89 (2008) (permitting governmental restrictions on child pornography); *Brown v. Glines,* 444 U.S. 348, 353 (1980) (upholding an Air Force regulation that prohibited the solicitation of petitions on military bases without prior approval by base commanders); *Roth v. United States,* 354 U.S. 476, 483 (1957) (explaining that suits based on the restraint of obscenity may proceed).

¶ 11. The constitutional protection of the First Amendment has its fullest and most robust application

---

[7] The First Amendment is applied to the states by the Fourteenth Amendment. *State v. Douglas D.,* 2001 WI 47, ¶ 2 n.2, 243 Wis. 2d 204, 626 N.W.2d 725 (citing *44 Liquormart, Inc. v. R.I.,* 517 U.S. 484, 489 n.1 (1996)).

to speech during a campaign for political office. *Buckley,* 424 U.S. at 14. It cannot be disputed that campaign advertisements are political speech that come within the scope of the First Amendment. *See Wis. Right to Life,* 551 U.S. at 469.

¶ 12. When a challenge is made to the regulation of campaign speech, the challenger is not required to prove that the regulation was unconstitutionally applied. *See id.* at 464. Because core First Amendment speech is being regulated by the government, the government's application of the regulation is subject to strict scrutiny. *See id.* Accordingly, the government bears the burden of proving that the application of its regulation does not contravene the First Amendment. *Id.* (explaining that with "strict scrutiny, the *Government* must prove that applying [the regulation] . . . furthers a compelling interest and [that the regulation] is narrowly tailored to achieve that interest").

¶ 13. Recent United States Supreme Court decisions that address governmental restrictions on speech demonstrate the application of strict scrutiny. In *R.A.V.,* the Supreme Court examined the St. Paul Bias-Motivated Crime Ordinance that provided:

> Whoever places on public or private property a symbol, object, appellation, characterization or graffiti, including, but not limited to, a burning cross or Nazi swastika, which one knows or has reasonable grounds to know arouses anger, alarm or resentment in others on the basis of race, color, creed, religion or gender commits disorderly conduct and shall be guilty of a misdemeanor.

*R.A.V.,* 505 U.S. at 380. The Minnesota Supreme Court upheld the ordinance, concluding that it was a consti-

tutionally permissible regulation of "fighting words" that the First Amendment did not protect. *Id.* at 380–81.

¶ 14. The United States Supreme Court accepted the Minnesota Supreme Court's interpretation of the ordinance as affecting only "fighting words," but it nevertheless struck down the ordinance because it restricted speech "solely on the basis of the subjects the speech addresses." *Id.* at 381. "The First Amendment does not permit St. Paul to impose special prohibitions on those speakers who express views on disfavored subjects." *Id.* at 391. In so concluding, the Supreme Court demonstrated that the First Amendment prevents governments from stifling speech.

¶ 15. More recently, in *Republican Party,* the United States Supreme Court examined a canon of the Minnesota Code of Judicial Conduct that provided, a "candidate for a judicial office, including an incumbent judge," may not "announce his or her views on disputed legal or political issues." *Republican Party,* 536 U.S. at 768 (internal quotes and quotation omitted). The candidate whose claim was before the Court alleged that the canon operated as a prior restraint of his speech because it "forced [him] to refrain from announcing his views on disputed issues during the 1998 campaign, to the point where he declined response to questions put to him by the press and public, out of concern that he might run afoul of the announce clause." *Id.* at 770.

¶ 16. The United States Supreme Court recognized that campaign speech is "at the core of our First Amendment freedoms." *Id.* at 774 (quotation omitted). The Court then subjected the Minnesota canon of judicial ethics to strict scrutiny, requiring the state to prove that the canon was "narrowly tailored[] to serve [] a compelling state interest." *Id.* at 774–75.

¶ 17. Minnesota had claimed that the "special context" of judicial elections permitted its "abridgement" of speech during the campaign. *Id.* at 781. The United States Supreme Court strongly disagreed with the State of Minnesota, by pronouncing that such an argument "sets our First Amendment jurisprudence on its head." *Id.* After a lengthy discussion, the Supreme Court concluded that the canon of judicial ethics violated the First Amendment. *Id.* at 788.

¶ 18. In 2010, the United States Supreme Court once again examined restrictions of speech relating to elections. *Citizens United v. Fed. Elections Comm'n,* 130 S. Ct. 876 (2010). In *Citizens United,* the Court explained that a First Amendment challenge to government regulation begins with interpreting the governmental regulation at issue. *Id.* at 889. The Court said that when interpreting a government regulation, courts must avoid drawing fine lines and making intricate case-by-case determinations to verify whether political speech is banned because to do so will chill the exercise of political speech contrary to the mandate of the First Amendment. *Id.* at 891–92 (explaining that "[t]he interpretative process itself would create inevitable, pervasive, and serious risk of chilling protected speech pending the drawing of fine distinctions that, in the end, would themselves be questionable"). Moreover, reviewing courts "must give the benefit of any doubt to protecting rather than stifling speech." *Id.* at 891 (further citations omitted).

¶ 19. In interpreting a governmental regulation of campaign speech, courts must recognize that, "[t]he decision to speak is made in the heat of political campaigns, when speakers react to messages conveyed by others." *Id.* at 895. Accordingly, for those involved in political campaigns, governmental regulations of uncer-

tain meaning effectively act as prior restraints on speech, in contravention of the First Amendment. *Id.* at 895–96. A constitutional interpretation of government-imposed regulation of campaign speech cannot include an interpretation that permits government officials to "pore over each word of a text to see if, in their judgment, it accords with the [regulation]." *Id.* at 896. Care must be taken in any interpretation that the government is not placed in the position of deciding "what political speech is safe for public consumption by applying ambiguous tests." *Id.* Furthermore, governmental regulations that cause the censorship of campaign speech are contrary to the principles upon which the First Amendment is predicated. *Id.*

¶ 20. Even though defamation cases such as *New York Times Co. v. Sullivan,* 376 U.S. 254 (1964) and *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990), are sometimes discussed in opinions where a governmental regulation of speech is at issue, principles from civil defamation cases should not be transferred into the analysis of governmental regulations that operate on protected speech. This is so because: (1) civil defamation claims do not involve enforcement of governmental regulations that are subject to strict scrutiny under the First Amendment; and (2) the law of defamation permits prosecution of false statements by private persons *only when* those statements also harm another's reputation, *see N.Y. Times,* 376 U.S. at 267, thereby permitting evidence of the effect of the statement on others.

¶ 21. To explain further, judicial consideration of an alleged violation of a governmental regulation of speech employs strict scrutiny to assure that the regulation serves a compelling governmental interest and also to assure that application of the regulation is

narrowly tailored to achieve that compelling interest. *Wis. Right to Life,* 551 U.S. at 464. Construction and application of governmental regulations of speech require the use of an objective test of the truth of the statement, which test does not permit consideration of the effect of the statement on the person hearing it. *Id.* at 469 (citing *Buckley,* 424 U.S. at 43–44) (explaining that "the proper standard for an as-applied challenge . . . must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect").

¶ 22. By sharp contrast in a civil defamation suit, no governmental regulation is construed, and in order to prevail, the plaintiff must prove he has sustained an injury to his reputation. *Rechsteiner v. Hazelden,* 2008 WI 97, ¶ 72 n.11, 313 Wis. 2d 542, 753 N.W.2d 496 (explaining that to prevail on a claim for defamation the plaintiff must prove a false statement that is unprivileged *and* "tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her"). Accordingly, proof that the statement's effect was to injure the plaintiff's reputation requires courts to consider the understanding of the hearer. *See New York Times,* 376 U.S. at 267; *Rechsteiner,* 313 Wis. 2d 542, ¶ 72 n.11.

¶ 23. For example, *New York Times* was based on a private right of action, *N.Y. Times,* 376 U.S. at 265 (noting "this is a civil lawsuit between private parties"); its holding balanced Sullivan's right to recover for damage to his reputation with the speaker's defense under the First Amendment, *id.* at 279–80. However, when the government seeks to enforce a restraint it has placed on speech by punishment for what the government has concluded is a violation of its regulation, there is no private injury warranting com-

pensation that is balanced with rights arising under the First Amendment, as was present in *New York Times.* *See* Charles Fried, *The New First Amendment Jurisprudence: A Threat to Liberty,* 59 U. Chi. L. Rev. 225, 238 (1992).[8] As explained above, the government must prove that the regulation it seeks to enforce survives strict scrutiny such that the application of the regulation is narrowly tailored to achieve a compelling state interest. A strict scrutiny analysis is completely absent from civil defamation cases.[9]

## 2. Interpretation and Application of SCR 60.06(3)(c)

¶ 24. It is within the above described framework of core constitutional principles established to ensure that campaign speech is not diminished, that we must interpret and apply SCR 60.06(3)(c) because the television advertisement occurred during the course of a campaign for political office.[10] It was run "to compare and contrast the background, qualifications, and experience of Justice Gableman with the background, qualifications, and experience of Justice Butler."[11] More importantly, each statement in the advertisement is true.[12]

---

[8] "The First Amendment protects a liberty—liberty of expression—and it is an effect of this liberty that there is wide and uninhibited discussion of political matters. . . . The First Amendment does not protect a person from lies or imposition by private individuals. Rather the First Amendment protects against impositions by government." Charles Fried, *The New First Amendment Jurisprudence: A Threat to Liberty,* 59 U. Chi. L. Rev. 225, 226–27, 234 (1992).

[9] *See, e.g., N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964); *Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990).

[10] Panel Decision (Finding of Fact No. 2).

[11] *Id.* (Finding of Fact No. 9).

[12] *Id.* (Findings of Fact Nos. 18–21). The Commission does not contest these, or any, findings of the Panel.

¶ 25. While reluctant to identify any impact of the First Amendment on SCR 60.06(3)(c), the Commission did opine that the compelling interest furthered by SCR 60.06(3)(c) is "the protection of the integrity of the judicial system," and that the rule could not be tailored more narrowly.[13] Justice Gableman does not contend that the protection of the integrity of the judicial system is not a compelling interest. However, he maintains that the Commission's interpretation and application of SCR 60.06(3)(c) is contrary to the First Amendment's protection of campaign speech. Stated otherwise, Justice Gableman maintains that when SCR 60.06(3)(c) is interpreted and applied using strict scrutiny, which the constitution requires, his campaign speech does not violate the Supreme Court Rule.

¶ 26. Our interpretation of SCR 60.06(3)(c) presents as a question of first impression and begins with the language of SCR 60.06(3)(c), which provides:

> Misrepresentations. A candidate for a judicial office shall not knowingly or with reckless disregard for the statement's truth or falsity misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent. A candidate for judicial office should not knowingly make representations that, although true, are misleading, or knowingly make statements that are likely to confuse the public with respect to the proper role of judges and lawyers in the American adversary system.

¶ 27. SCR 60.06(3)(c) has the potential to operate as a prior restraint of speech during judicial campaigns. This is so because, without defining "truth or falsity," SCR 60.06(3)(c) both prohibits judicial candidates from

---

[13] April 16, 2010 statement of James Alexander at oral argument before this court.

making certain statements during the course of campaigns and permits the government to prosecute and punish willful violations. *See* Wis. Stat. §§ 757.81(4)(a), 757.85(5) and 757.91.

¶ 28. When a governmental regulation is not clear and is interpreted using "ambiguous tests," it forces a speaker who wants to avoid the threat of punishment to obtain prior permission to speak. *See Citizens United,* 130 S. Ct. at 896. Rather than undertake the burden of obtaining prior approval, a speaker may choose simply to abstain from protected speech. The result is self-censorship. *See id.;* William T. Mayton, *Toward a Theory of First Amendment Process: Injunctions of Speech, Subsequent Punishment, and the Costs of the Prior Restraint Doctrine,* 67 Cornell L. Rev. 245 (1982).

¶ 29. Without a doubt, the First Amendment applies to SCR 60.06(3)(c)'s interpretation and application, *see Wis. Right to Life,* 551 U.S. at 476, and, therefore, SCR 60.06(3)(c) is subject to strict scrutiny by this court, *see id.* at 464 (explaining that "the *Government* must prove that applying [the regulation] . . . furthers a compelling interest and [that the regulation] is narrowly tailored to achieve that interest"); *see also Republican Party,* 536 U.S. at 774–75. Under strict scrutiny, SCR 60.06(3)(c) can be constitutionally applied "only if it is narrowly tailored to further a compelling interest." *Wis. Right to Life,* 551 U.S. at 476.

¶ 30. Supreme Court Rules are subject to the rules of statutory construction. *Filppula-McArthur,* 241 Wis. 2d 110, ¶ 32. Accordingly, we begin with the language of the rule. *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Context is also an important consideration in rule interpretation. *See Burbank Grease Servs., LLC*

*v. Sokolowski,* 2006 WI 103, ¶ 26, 294 Wis. 2d 274, 717 N.W.2d 781. That this rule operates in the context of judicial elections is important because it affects core political speech, which enjoys the "fullest and most urgent" protection under the First Amendment. *Wis. Right to Life,* 551 U.S. at 469; *Buckley,* 424 U.S. at 15.

¶ 31. The Commission alleges no violation of the second sentence of SCR 60.06(3)(c); rather, the Commission claims Justice Gableman violated the first sentence of SCR 60.06(3)(c), which provides:

> A candidate for judicial office shall not knowingly or with reckless disregard for the statement's truth or falsity misrepresent the identity, qualifications, present position, or other fact concerning the candidate or an opponent.

The Panel interpreted SCR 60.06(3)(c), and in so doing, it compared the first sentence of SCR 60.06(3)(c), which is phrased in mandatory terms, and the second sentence of SCR 60.06(3)(c), which is phrased in aspirational terms.[14]

¶ 32. The second sentence of SCR 60.06(3)(c) addresses statements that although true, are misleading or likely to confuse. It must regulate conduct that does not fall within the parameters of the first sentence, to avoid rendering the second sentence mere surplusage.[15] Therefore, to violate the first sentence, the statement

---

[14] SCR 60.06(3)(c) cmt. (explaining that "[t]he second sentence is aspirational" and "[t]he remaining standards are mandatory").

[15] We interpret rules to avoid surplusage. *See Hutson v. Wisconsin Pers. Comm'n,* 2003 WI 97, ¶ 49, 263 Wis. 2d 612. 655 N.W.2d 212.

must be false because a true statement that misleads falls within the second sentence of SCR 60.06(3)(c).

¶ 33. Two members of the Panel concluded that because each of the statements in the advertisement was true, no violation occurred.[16] Stated otherwise, those Panel members determined that SCR 60.06(3)(c) does not regulate objectively true statements. We agree with that interpretation of the rule.

¶ 34. To explain further, the Panel's interpretation comports with the requirements of the First Amendment as well as generally accepted principles of statutory interpretation. This is so because defining "truth" as a statement that is objectively true, without regard to any effect the statement may or may not have on the hearer, narrowly tailors the rule as strict scrutiny requires.[17]

¶ 35. Defining "truth" as a statement that is objectively true also accomplishes at least three other important First Amendment goals: (1) it limits the rule's potential to be enforced as an effective prior restraint of speech, *see Citizens United,* 130 S. Ct. at 892; (2) it removes uncertainty from the rule, thereby reducing the propensity for self-censorship, i.e., the chilling of political speech, *see id.* at 895–96; and (3) it promotes uniform application of the rule because the

[16] Panel Decision, 14.

[17] The Abrahamson writings repeatedly rely on defamation cases. In so doing, the writings fail to recognize that civil defamation cases do not employ strict scrutiny as part of the analysis. However, subjecting the governmental regulation of speech to strict scrutiny is a foundational principle that a proper First Amendment analysis requires when the government is seeking punishment for an alleged violation of its regulation. *Fed. Elections Comm'n v. Wis. Right to Life,* 551 U.S. 449, 464 (2007).

speaker is not at the mercy of the hearer's understanding, *see Wis. Right to Life,* 551 U.S. at 469.

¶ 36. The Commission asserts a television advertisement run by Justice Gableman's campaign committee "directly *implied* and was *intended to convey* the message that action or conduct of Louis Butler enabled or resulted in [Reuben] Mitchell's release and Mitchell's subsequent commission of a criminal molestation."[18] The Commission fundamentally misunderstands the test required by the United States Supreme Court for governmental regulations of campaign speech. Its misunderstanding of the appropriate test leads the Commission to attempt to punish speech not because the statements were untrue but because they "implied" or "intended to convey" a particular message. To do what the Commission attempts is constitutionally impermissible; it is prohibited by the First Amendment. Let us explain more fully.

¶ 37. In *Wisconsin Right to Life,* the United States Supreme Court mandated the use of an objective standard when evaluating speech to which a governmental regulation was being applied. *Id.,* 551 U.S. at 469. The required objective standard does not consider the intent of the speaker or the effect of the speech on the hearer. *Id.* (explaining that "the proper standard for an as-applied challenge . . . must be objective, focusing on the substance of the communication rather than amorphous considerations of intent and effect").

¶ 38. Furthermore, United States Supreme Court precedent prohibits applying SCR 60.06(3)(c) in a way that considers what a hearer thinks the campaign speech means. *See Citizens United,* 130 S. Ct. at 896 (explaining that the First Amendment protects against

---

[18] Commission compl., ¶ 11 (emphasis added).

government officials "por[ing] over each word of a text to see if, in their judgment, it accords with the [regulation]"). However, that is exactly what the Commission has done.

¶ 39. The Commission admits that each statement made in the advertisement is true. All parties agree that the First Amendment prohibits punishing truthful speech. *See Wis. Right to Life,* 551 U.S. at 467–68. That should be the end of the discussion. However, rather than acceding to this foundational First Amendment principle, the Commission attempts to redefine what "true" means. The Commission does so through its interpretation of the advertisement as statements that "implied and w[ere][] intended to convey" an untrue message about Louis Butler.[19]

¶ 40. *Wisconsin Right to Life* repeatedly explains that the court has rejected a First Amendment test of campaign speech that considers the intent of the speaker. *Id.*

> For the reasons regarded as sufficient in *Buckley,* we decline to adopt a test for as-applied challenges turning on the speaker's intent to affect an election. . . . The test should also "reflect our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open." *A test turning on the intent of the speaker does not remotely fit the bill.*

*Id.* (emphasis added) (quoting *Buckley,* 424 U.S. at 14 (further internal quotes and citation omitted)). The Supreme Court explained that considering the speaker's intent could lead to "the bizarre result that identical ads aired at the same time could be protected speech for one speaker, while leading to criminal penalties for another." *Id.* at 468.

---

[19] *Id.*

¶ 41. *Wisconsin Right to Life* also reaffirmed *Buckley*'s holding that First Amendment campaign speech cannot be limited by the hearers' understanding of what was said, rather than evaluating the words actually spoken. As the Supreme Court related:

> *Buckley* also explains the flaws of a test based on the actual effect speech will have on an election or on a particular segment of the target audience. *Such a test "puts the speaker . . . wholly at the mercy of the varied understanding of his hearers."* . . . Litigation on such a standard may or may not accurately predict electoral effects, but it will unquestionably chill a substantial amount of political speech.

*Id.* at 469 (emphasis added) (quoting *Buckley,* 424 U.S. at 43). Accordingly, because the proper test for an as-applied challenge to governmental regulation of political campaign speech "must give the benefit of any doubt to protecting rather than stifling speech," it cannot be limited by a hearer's interpretation. *Id.* To apply the governmental regulation broadly so as to encompass what a hearer may infer from the statement, as the Commission has done, contravenes the mandate of strict scrutiny that regulations of speech must be narrowly tailored as they are applied. *Id.*

¶ 42. The Commission asserts we must "interpret" the statements based on the "context in which [they were] made."[20] The Commission relies on various defamation cases "for guidance in determining that the Advertisement contains a false statement of fact."[21] The Commission's reliance on defamation cases for support

[20] April 16, 2010 statement of James Alexander at oral argument before this court.

[21] Commission brief in chief, 12. The Abrahamson writings fall into the same quagmire because of their reliance on civil

653

in defining that the statements in the advertisement are false is misplaced. This is so because the Commission employs a broad interpretation and application of SCR 60.06(3)(c), contrary to strict scrutiny, and also because the test for determining whether a statement is false is different in defamation cases than it is in governmental restraint cases. *Compare N.Y. Times,* 376 U.S. at 267, *with Wis. Right to Life,* 551 U.S. at 469.

¶ 43. Our position that defamation principles should not be applied to SCR 60.06(3) also is supported by the plain meaning of SCR 60.06(3)(c). To explain, while SCR 60.06(3)(c) applies to statements that one candidate makes about another candidate, it also applies to statements that a candidate makes about himself or herself. Defamation cases can have no relevance to an alleged SCR 60.06(3)(c) violation based on an untruthful statement a candidate makes about himself or herself.

¶ 44. The Supreme Court's discussion of false statements in civil defamation cases is not appropriate to engraft onto cases addressing governmental regulations of political speech. This is so for at least three reasons: (1) in defamation cases, the falsity of the statement is interwoven with the effect of the statement on the hearer, *Milkovich,* 497 U.S. at 20 n.7; (2) in governmental regulation of political speech cases, we are prohibited from considering the effect of the speech on the hearer, *Wisconsin Right to Life,* 551 U.S. at 469; and (3) civil defamation cases arise from a private right of action where the plaintiff's right to recover for damages to his good name is balanced with the speaker's defense under

defamation cases where the effect of the statement on the hearer is not only a permissible part of the analysis of the claim, it is a required part. *See, e.g., Milkovich,* 497 U.S. at 20 n.7.

654

the First Amendment, without concerns that a governmental regulation will chill constitutional speech.[22]

¶ 45. A United States Supreme Court defamation decision provides a helpful example, demonstrating how the analysis of whether a statement is false in a defamation case differs from the analysis of whether a statement is false in a governmental regulation of political speech case. In *Milkovich*, the Supreme Court was asked to decide whether a statement expressed as an opinion was protected from prosecution as defamation. *Milkovich*, 497 U.S. at 3. There, the Lorain Journal published an article "implying that petitioner Michael Milkovich, a local high school wrestling coach, lied under oath in a judicial proceeding." *Id.*

¶ 46. The defamation claim in *Milkovich* required proof that the published statement was false and also that it lowered Milkovich in the esteem of others. *Id.* at 11. The Supreme Court noted that because Milkovich's claim was based on defamation, the issue of falsity was interwoven with the defamatory nature of the statement. *Id.* at 20. As the Supreme Court has explained for defamation claims, "the issue of falsity relates to the *defamatory* facts implied by a statement." *Id.* at 20 n.7. Therefore, in order to prove that a statement is defamatory, the defamatory effect on a reasonable hearer must be shown. *Id.* at 20. Accordingly, in defamation suits, implications from the statements actually made are discussed because of the requirement to prove that the statements had a defamatory effect on the hearer.

¶ 47. The evaluation of whether a statement is false when the potential for restraint of political speech is at issue is much different. When a governmental regulation of speech results in the government's seek-

---

[22] *See supra* ¶¶ 20–23 (discussing defamation cases).

ing to punish the speech that it sought to regulate, the United States Supreme Court has precluded consideration of the effect of the speech on the hearer. *Wis. Right to Life*, 551 U.S. at 469 (explaining that "a test based on the actual effect speech will have . . . puts the speaker . . . wholly at the mercy of the varied understanding of his hearers"). Rather than considering the effect of the speech on others, an objective test for the truthfulness of the statement is applied. *Id.* Stated otherwise, the alleged falsity when governmental regulation of speech is at issue is not related to facts that may be implied by the statement. *See id.* Furthermore, when a civil defamation claim is under review, strict scrutiny is not part of the analysis, yet when the government regulates campaign speech, strict scrutiny forms the foundation for the constitutional analysis. *Buckley*, 424 U.S. at 75.

¶ 48. We are bound to follow the directives of the United States Supreme Court's First Amendment jurisprudence as we apply SCR 60.06(3)(c). *Republican Party* clearly establishes that candidates for judicial office have First Amendment rights that codes of judicial conduct may not transgress. *Republican Party*, 536 U.S. at 788. Accordingly, we apply an objective test in our review of whether the statements made are false statements of fact. We review the words actually used in the advertisements. We do not apply "amorphous considerations of intent and effect." *Id.* Furthermore, the United States Supreme Court has instructed that courts are to apply governmental regulations in a way that will preserve their constitutionality. *Citizens United*, 130 S. Ct. at 892.

¶ 49. We conclude that the statements in the campaign advertisement were objectively true and

656

therefore, they did not violate SCR 60.06(3)(c). Were we to conclude that objectively true statements can be punished for what the government asserts they imply or for the alleged effect they may have on some hearer, we would violate the command of strict scrutiny that the regulation be narrowly construed and applied. We follow the directives of the United States Supreme Court in our decision, as we must.

## C. Burden of Proof

¶ 50. The Commission commenced this original action[23] by filing a complaint against then-Judge Gableman with the clerk of the supreme court, pursuant to Wis. Stat. § 757.85(5). In so doing, the Commission assumed the obligation to prosecute the complaint, § 757.85(6), and was given the burden to prove the complaint as set out in Wis. Stat. § 757.89. Section 757.89 requires that a complaint alleging judicial misconduct "be prove[d] to a reasonable certainty by evidence that is clear, satisfactory and convincing."

¶ 51. Wisconsin Stat. § 757.91, entitled "Supreme court; disposition," assists us in determining how the facts are established. Section 757.91 provides as follows:

> The supreme court shall review the findings of fact, conclusions of law and recommendations under s. 757.89 and determine appropriate discipline in cases of misconduct. . . . The rules of the supreme court applicable to civil cases in the supreme court govern the review proceedings under this section.

¶ 52. In this case, there is no dispute by either party about the Panel's findings of fact. On review, we

---

[23] The Wisconsin Supreme Court has appellate and original jurisdiction. Wis. Const. art. VII, § 3(2).

657

employ the rules applicable to civil proceedings and we accept the Panel's findings of fact unless they are clearly erroneous. No party contends the Panel's fact findings are clearly erroneous or that there is any need for further fact-finding. Rather, both parties accept the Panel's findings of fact as the facts upon which our ultimate decision is to be made.

¶ 53. We three justices have concluded that based on the undisputed facts before us, the Commission has failed to prove the allegations in its complaint by evidence that is clear, satisfactory and convincing as Wis. Stat. § 757.89 obligates the Commission to do. When a party has not met its required burden of proof, dismissal of the complaint is required by law. Wis. Stat. § 757.89; *see Seraphine,* 44 Wis. 2d at 65.

¶ 54. This case has not been dismissed because Chief Justice Abrahamson, Justice Bradley and Justice Crooks refuse to apply the burden of proof to the Commission that the legislature specifically requires in § 757.89. They refuse to follow the law, even though it is apparent that the Commission has not met its burden of convincing four members of this court that Justice Gableman violated SCR 60.06(3)(c), and even though the Commission agrees that the facts found by the Panel are all true.[24]

---

[24] Instead of applying the burden of proof required by Wis. Stat. § 757.89, Chief Justice Abrahamson, Justice Bradley and Justice Crooks suggest that the complaint should be returned to the Commission so that the Commission can now request a jury trial. Abrahamson writings, ¶¶ 15–17. This suggestion passes belief. Juries determine facts and the facts of this matter are not in dispute, by either the Commission or Justice Gableman. Furthermore, no party has asserted that the facts as found by the Panel should be supplemented.

¶ 55. The Abrahamson writings also repeatedly try to shift the focus of the reader to a discussion of summary judgment, when no party has moved this court for summary judgment.[25] This is not an appellate

A hearing before a jury panel is not a legal option. This is so because Wis. Stat. § 757.87(1) requires that any request for a hearing before a jury panel must have been made by the vote of a majority of the members of the Commission "*before* the commission files a formal complaint." § 757.87(1) (emphasis added). Such votes "shall be recorded and shall be available for public inspection under [Wis. Stat.] s. 19.35." *Id.* The Commission did not request a hearing before a jury panel; the Commission chose a hearing before a three-judge panel, as it had the right to do. § 757.87(1).

In addition, the Abrahamson writings are not forthright in their representations to the public about the availability of a hearing before a jury panel. Their writings Gerry-rig Wis. Stat. § 757.87(1) by eliminating words from the statute to make it appear that their suggestion of a jury panel is reasonable. In that regard, it is worth reading the actual statute, so that a comparison can be made with the Abrahamson writings' representation, *see* ¶ 15 n.9, and what actually is written in the statute. Section 757.87(1) provides:

> After the commission has found probable cause that a judge or circuit or supplemental court commissioner has engaged in misconduct or has a permanent disability, and before the commission files a formal complaint or a petition under s. 757.85(5), the commission may, by a majority of its total membership not disqualified from voting, request a jury hearing. If a jury is not requested, the matter shall be heard by a panel constituted under sub. (3). The vote of each member on the question of a jury request shall be recorded and shall be available for public inspection under s. 19.35 after the formal complaint or the petition is filed.

[25] The Abrahamson writings also mischaracterizes our opinion as "granting summary judgment." Abrahamson writings, ¶ 9. No party moved this court for summary judgment and we three justices are not ruling on a motion for summary judgment. Because this is a case of original jurisdiction, we are not reviewing a summary judgment motion made to the Panel. We have

659

review process in which we are engaged, where we review motions made and decided by a previous court. This complaint was filed with the Wisconsin Supreme Court; it is a case of original jurisdiction. No one has moved this court for summary judgment. The Abrahamson writings' attempt to fog the issues actually presented with their summary judgment ploy is unworthy of the difficult process in which we are engaged.

¶ 56. Applying the burden of proof set out by the legislature in Wis. Stat. § 757.89, requires dismissal of the complaint. Other courts have dismissed actions when the party who had the burden of proof garnered only an evenly divided court. For example, in *In re Isserman* (*Isserman I*), 345 U.S. 286 (1953) the United States Supreme Court was equally divided when the Court was confronted with whether Isserman, an attorney convicted of misconduct and disbarred by a state supreme court, should be disbarred by the United States Supreme Court as well. When the Isserman matter was first presented to the Supreme Court, the rule provided that Isserman be disbarred unless "he shows good cause to the contrary within forty days." *Id.* at 287. The Supreme Court was equally divided on the issue and resolved the division based on Isserman's failure to meet his burden to prove good cause:

> The order of the Court placed the burden upon respondent to show good cause why he should not be disbarred. In our judgment, he has failed to meet this test. An order disbarring him from practice in this Court should issue.

*Id.* at 290.

---

independently reviewed the record, including the basis for the findings of fact made by the Panel, and the applicable law.

¶ 57. Less than one year later, on rehearing, the Supreme Court vacated the order entered in *Isserman I. In re Isserman (Isserman II)*, 348 U.S. 1 (1954). The Court noted that on April 6, 1953, "an order was entered disbarring Isserman from the practice of law in this Court pursuant to . . . this Court's Rules then in effect." *Id.* at 1. However, at the time of *Isserman II*, the governing rule had been amended such that " 'no order of disbarment will be entered except with the concurrence of a majority of the justices participating.' " *Id.* (quoting Supreme Court Rule 2). Because it was no longer Isserman's burden to prove why he should not be disbarred, the previous order of disbarment was set aside. *Id.* At the United States Supreme Court level, the party who had the burden of proof lost whenever that burden was not met.

¶ 58. In *In re Apportionment of Mich. Legislature*, 140 N.W.2d 436 (Mich. 1966), in an original action, an equally divided Michigan Supreme Court dismissed a petition alleging defects in a plan of legislative apportionment. While each of the justices filed a separate writing, dismissal occurred because a majority of the court could not agree that the alternate apportionment plan was constitutionally deficient, i.e., the allegations in the petition had not been proved. *Id.* at 468.

¶ 59. In *Lohrmann v. Arundel Corp.*, 500 A.2d 344 (Md. Ct. Spec. App. 1985), the Maryland Court of Special Appeals was confronted with "whether an evenly-divided vote by the Ann Arundel County Board of Appeals operates as a denial of a special exception previously granted by a zoning hearing officer or as an affirmance of the hearing officer's decision." *Id.* at 345. The court concluded that Arundel Corporation had the burden of proof before the Board. Because the Board was evenly divided, Arundel Corporation had not met its requisite

burden of proof. *Id.* Accordingly, Arundel Corporation's request for a special exception was denied. *Id.*

¶ 60. The burden of proof is a foundational premise of law. The person to whom that burden is assigned must meet it or dismissal of the complaint is required. This is so because when the burden of proof has not been met, the evidence presented is held insufficient to satisfy the charge made in the complaint as a matter of law. *See Bubb v. Bruskey*, 2009 WI 91, ¶ 30, 321 Wis. 2d 1, 768 N.W.2d 903; *State v. Bonds*, 2006 WI 83, ¶ 53, 292 Wis. 2d 344, 717 N.W.2d 133.

¶ 61. The equal division of the justices in the complaint pending against Justice Gableman shows that the Commission has failed to carry its burden to prove to a majority of the court that Justice Gableman violated SCR 60.06(3)(c) by evidence that is clear, satisfactory and convincing, as Wis. Stat. § 757.89 requires. Accordingly, we anticipate that the Commission, or the Commission and Justice Gableman together, promptly will move this court to dismiss the Commission's complaint, as it is apparent that it cannot be proved.

## III. CONCLUSION

¶ 62. Three members of the court, Justice Prosser, Justice Roggensack and Justice Ziegler, agree with the recommendation of the three-judge Panel that the Commission's complaint against Justice Gableman must be dismissed. We agree with the Panel's recommendation because after conducting an independent review of the record and considering the arguments of counsel, we have concluded that the Commission failed to establish, by evidence that is clear, satisfactory and convincing, that Justice Michael J. Gableman violated SCR 60.06(3)(c).

¶ 63. The campaign advertisement that gave rise to the Commission's complaint against Justice Gableman and the governmental rule, SCR 60.06(3)(c), by which the Commission seeks to punish Justice Gableman for that advertisement must be examined according to the commands of the First Amendment. As the United States Supreme Court has explained, the First Amendment applies to judicial elections and those canons of judicial ethics that states seek to apply to judicial elections. *Republican Party,* 536 U.S. at 788. We acknowledge that the advertisement run by Justice Gableman's campaign committee was distasteful; however, the First Amendment prevents the government from stifling speech, even when that speech is distasteful. *R.A.V.,* 505 U.S. at 380, 391. The United States Supreme Court has established the parameters of the First Amendment's protections of campaign speech that we have followed in our decision.

¶ 64. In order to meet the burden of proof assigned to the Commission by Wis. Stat. § 757.89, at least four justices must conclude that the advertisement by Justice Gableman's campaign committee violated SCR 60.06(3)(c), when SCR 60.06(3)(c) is interpreted and applied consistent with the commands of the First Amendment. The Commission has not met that burden of proof. Accordingly, we anticipate that the Commission, or the Commission and Justice Gableman together, promptly will file a motion to dismiss the complaint against Justice Gableman.