In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Joan F. KESSLER, Attorney at Law:

LAWYER REGULATION SYSTEM OF the STATE OF WISCONSIN by Gregory S. Bonney, Special Investigator,
Complainant,

v.

Joan F. KESSLER, Respondent.

Supreme Court

*No. 2009AP1529–D. Decided October 14, 2010.*

2010 WI 121

(Also reported in 789 N.W.2d 734.)

¶ 1. PER CURIAM. This is an attorney disciplinary proceeding against Joan F. Kessler. Ms. Kessler is currently a judge on the Wisconsin Court of Appeals. At the time of the events that formed the basis for the complaint filed on behalf of the Lawyer Regulation System (LRS),[1] Ms. Kessler was a practicing attorney and a partner in the Milwaukee office of the law firm of

[1] The complainant in this disciplinary proceeding is the Lawyer Regulation System rather than the Office of Lawyer Regulation (OLR). This is due to the fact that during the time of the underlying events before her election to the court of appeals, Attorney Kessler served as a referee in attorney disciplinary proceedings. Thus, the OLR was required under SCR 22.25 to appoint a special investigator who was not a participant in the lawyer regulation system and was not on the panel of counsel whom the OLR could retain to assist it in its

Foley & Lardner. The LRS is seeking to have discipline imposed on Ms. Kessler as a lawyer, not as a judge. Consequently, this opinion will refer to her as Attorney Kessler.

¶ 2. In this proceeding, we review the recommendation of the referee, John Nicholas Schweitzer, that the disciplinary complaint against Attorney Kessler be dismissed. Because no party has appealed from the referee's report and recommendation, our review proceeds pursuant to SCR 22.17(2).[2]

¶ 3. After thoroughly reviewing the matter under the required standard of review, we conclude that the referee's findings of fact are not clearly erroneous and that those factual findings require the dismissal of the disciplinary charges brought by the LRS against Attorney Kessler. In most instances, such a dismissal would occur by unpublished order. Because of the fact that the

duties. In this case, Attorney Bruce Rosen was initially appointed as the special investigator. Attorney Rosen was subsequently replaced as the special investigator by Attorney Gregory S. Bonney. When a participant in the lawyer regulation system, such as Attorney Kessler, is alleged to have committed misconduct, the matter is also referred to the special preliminary review panel, which is separate from the preliminary review panel to which regular attorney disciplinary matters are referred. Thus, because the OLR is not involved in any way in investigating or prosecuting a complaint against an attorney who is a participant in Wisconsin's lawyer regulation system, the complaint is brought on behalf of the Wisconsin Lawyer Regulation System by the special investigator.

[2] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

respondent attorney in this matter is now a sitting judge and due to the need to provide a full explanation for the decision we reach, we are issuing our decision in the form of a detailed, published per curiam opinion.

¶ 4. This attorney disciplinary proceeding was formally initiated with the filing of a complaint and order to answer by the LRS. The LRS's complaint alleged two counts of professional misconduct against Attorney Kessler. In Count One, the complaint alleged that at an interview with the special investigator on June 8, 2004, Attorney Kessler had falsely stated that to her knowledge neither she nor anyone in her campaign nor anyone she knew had any part in the filing of a complaint against Judge Charles Schudson with the Wisconsin Judicial Commission. Count One further alleged that Attorney Kessler had reiterated that false statement under oath at a subsequent interview with the special investigator on September 1, 2005. It claimed that these two knowingly false statements to a LRS special investigator had violated SCRs 20:8.1[3] and 20:8.4(c).[4]

---

[3] SCR 20:8.1 states:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by SCR 20:1.6.

[4] SCR 20:8.4(c) states it is professional misconduct for a

¶ 5.    Count Two of the complaint similarly alleged that Attorney Kessler had falsely stated during the two separate interviews identified above that she did not know who had leaked information about the Judicial Commission complaint against Judge Schudson to the *Milwaukee Journal Sentinel.* Count Two claimed that Attorney Kessler's knowingly false statements on this topic also violated SCRs 20:8.1 and 20:8.4(c).

¶ 6.    After conducting an evidentiary hearing, the referee found that the relevant facts were as follows. In July 2002 then-Court of Appeals Judge Charles Schudson wrote a letter (the Schudson letter) to United States District Judge Charles Clevert, in which Judge Schudson commented favorably on Attorney Charles Hausmann. At the time of the letter, Attorney Hausmann was awaiting sentencing before Judge Clevert following Attorney Hausmann's criminal conviction.

¶ 7.    Attorney Kessler ran against Judge Schudson for a seat on the court of appeals in 2004. Attorney Kessler testified at the disciplinary hearing that prior to beginning her campaign, she learned of the Schudson letter. She considered the Schudson letter to be a possible violation of the Code of Judicial Conduct[5] and determined that she wanted to see the letter and other

lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[5] Supreme Court Rule 60.03(2), which generally prohibits the use of the prestige of a judicial office to advance the interests of the judge or others, provides that "[a] judge may not testify voluntarily as a character witness." The comment to that provision of the Code of Judicial Conduct explains how the rule applies to the sending of letters or the giving of testimony in the context of a sentencing decision by another judge:    "However, a judge must not initiate the communication of information to a sentencing judge or a probation or corrections officer but may

relevant documents before using the issue of the letter in her campaign against Judge Schudson.

¶ 8. In September 2003, after learning that the federal court's physical case file in the Hausmann case was then located at the United States Court of Appeals for the Seventh Circuit in Chicago, Attorney Kessler asked a colleague in Foley & Lardner's Chicago office to obtain a copy of the Schudson letter and the trial court docket record for the Hausmann case. The docket record was necessary to ascertain whether Judge Schudson had written the letter in response to a formal request or whether he had written the letter of his own accord. *See* SCR 60.03(2).

¶ 9. In response to Attorney Kessler's request, the colleague provided Attorney Kessler with a copy of a 16–page docket record from the Hausmann case that was printed from the federal PACER system (the PACER document). The PACER system is a federal internet-based service that allows individuals or law firms to access documents or information from federal judicial case files. In order to use the PACER system, one needs to register and obtain a PACER login code. When one connects to the PACER system, there is a separate field that allows the user to enter a "client code."

¶ 10. The docket record shown on the PACER document indicated that the Schudson letter was a public document and a part of the official case record in the Hausmann federal criminal proceeding. The final page of the PACER document the colleague provided to Attorney Kessler contained a "Transaction Receipt." That receipt indicated that the PACER document had

provide to such persons information for the record in response to a formal request." SCR 60.03(2) (comment).

been generated on September 29, 2003. The receipt shows a "PACER Login" of "fl0025" and a "Client Code" of "460439–0001 LT."

¶ 11.  Attorney Kessler talked with her husband, Fred Kessler,[6] about the Schudson letter and whether it constituted a violation of the Code of Judicial Conduct. Fred Kessler is an attorney licensed to practice law in this state and is currently a member of the Wisconsin legislature. He was heavily involved in assisting Attorney Kessler's 2003–04 judicial campaign. When Attorney Kessler obtained the PACER document, she provided a copy of it to her husband. In addition, Attorney Kessler also gave copies of the PACER document to one or more friends who were also assisting her judicial campaign.

¶ 12.  According to Fred Kessler's testimony at the disciplinary hearing, in October 2003 he had lunch with Mary Moser, the wife of former Wisconsin Court of Appeals Judge William Moser. Mrs. Moser had earlier indicated that she would be willing to assist Attorney Kessler's campaign. During their meeting, Fred Kessler asked Mrs. Moser to file a complaint against Judge Schudson with the Wisconsin Judicial Commission regarding the Schudson letter.[7] He drafted a complaint

---

[6] In order to avoid confusion between the two Kesslers, this opinion will refer to Attorney Frederick P. Kessler as "Fred Kessler."

[7] An attorney disciplinary complaint was later filed against Fred Kessler arising out of a statement he allegedly made to Mrs. Moser during the October 2003 meeting suggesting that she not answer truthfully any questions about the source of her knowledge of the Schudson letter. The disciplinary proceeding against Fred Kessler is being resolved in a separate opinion also issued today. *In re Disciplinary Proceedings Against Fred Kessler*, 2010 WI 120 (Case No. 2008AP834–D).

letter for her signature and provided to her, among other things, a copy of the Schudson letter and a copy of the PACER document to be used as attachments to her complaint letter. On October 31, 2003, as requested by Fred Kessler, Mrs. Moser filed the complaint letter with the Judicial Commission, with the copies of the Schudson letter and the PACER document attached.

¶ 13. Judge Schudson became aware of the complaint filed against him. He has acknowledged that after learning of the complaint against him, he discussed it with other judges. In February 2004 Judge Schudson filed a grievance against Attorney Kessler with the OLR concerning a number of issues. Because Attorney Kessler had served as a referee in attorney disciplinary cases, the grievance against her was referred to Attorney Bruce Rosen as a special investigator pursuant to SCR 22.25.

¶ 14. On March 8, 2004, a column in the *Milwaukee Journal Sentinel* published information about the substance of the complaint against Judge Schudson that had been filed with the Judicial Commission. The information about the filing of the complaint was supposed to have been maintained as confidential at that time under Wis. Stat. § 757.93 because the Judicial Commission had not filed a petition or formal complaint against Judge Schudson.[8]

---

[8] Wisconsin Stat. § 757.93 (2003–04) provided: Confidentiality of proceedings.

(1)(a) All proceedings under ss. 757.81 to 757.99 relating to misconduct or permanent disability prior to the filing of a petition or formal complaint by the commission are confidential unless a judge or circuit or supplemental court commissioner waives the right to confidentiality in writing to the commission. Any such

¶ 15. Attorney Kessler defeated Judge Schudson in the April 2004 general election for a seat on the

waiver does not affect the confidentiality of the identity of a person providing information under par. (b).

(b) Any person who provides information to the commission concerning possible misconduct or permanent disability may request that the commission not disclose his or her identity to the judge or circuit or supplemental court commissioner prior to the filing of a petition or a formal complaint by the commission.

(2) If prior to the filing of a formal complaint or a petition an investigation of possible misconduct or permanent disability becomes known to the public, the commission may issue statements in order to confirm the pendency of the investigation, to clarify the procedural aspects of the disciplinary proceedings, to explain the right of the judge or circuit or supplemental court commissioner to a fair hearing without prejudgment, to state that the judge or circuit or supplemental court commissioner denies the allegations, to state that an investigation has been completed and no probable cause was found or to correct public misinformation.

(3) The petition or formal complaint filed under s. 757.85 by the commission and all subsequent hearings thereon are public.

(4) This section does not preclude the commission, in its sole discretion, from:

(a) Referring to the director of state courts information relating to an alleged delay or an alleged temporary disability of a judge or circuit or supplemental court commissioner.

(b) Referring to an appropriate law enforcement authority information relating to possible criminal conduct or otherwise cooperating with a law enforcement authority in matters of mutual interest.

547

Wisconsin Court of Appeals. Attorney Kessler began serving her first term as a court of appeals judge on August 1, 2004.

¶ 16. On June 8, 2004, Special Investigator Rosen interviewed Attorney Kessler regarding the grievance filed by Judge Schudson. At the end of the interview, Special Investigator Rosen informed Attorney Kessler that he had received a copy of the complaint letter and the attachments that had been filed against Judge Schudson with the Judicial Commission. He also stated that the complaint letter had been filed by Mrs. Moser. He specifically showed Attorney Kessler the "Transaction Receipt" from the PACER document that had been attached to Mrs. Moser's complaint letter, with the "fl0025" Login Code. Special Investigator Rosen then asked Attorney Kessler whether she, anyone in her campaign, or anyone she knew, to her knowledge, had any part in the filing of the complaint against Judge Schudson. Attorney Kessler's response to that question was initially to become "extremely stoic." She then answered, "No."

¶ 17. The referee credited Attorney Kessler's testimony at the disciplinary hearing that she had become thoughtful in response to the question because she

(c) Referring to an attorney disciplinary agency information relating to the possible misconduct or incapacity of an attorney or otherwise cooperating with an attorney disciplinary agency in matters of mutual interest.

(d) Disclosing to the chief justice or director of state courts information relating to matters affecting the administration of the courts.

(e) Issuing an annual report under s. 757.97.

recognized the documents and realized the possibility that they could have come from someone associated with her campaign.[9] The referee made a specific factual finding, however, that Attorney Kessler did not know at the time of the June 8, 2004, interview that the documents attached to the complaint had come from the copies she had distributed to her husband and to a few friends working on her campaign.

¶ 18. Also during the June 8, 2004, interview, Special Investigator Rosen asked Attorney Kessler whether she, anyone in her campaign, or anyone she knew, to her knowledge, had leaked information about the complaint against Judge Schudson to the *Milwaukee Journal Sentinel*. Attorney Kessler again answered, "No." The referee accepted Attorney Kessler's testimony on this issue, again finding that she, in fact, did not know who had leaked the information to the newspaper.

¶ 19. The referee also credited Attorney Kessler's testimony that after the interview had ended, she called her husband and asked whether he had played any part in the filing of the complaint against Judge Schudson. He responded that he had been involved.

¶ 20. The referee further found that Attorney Kessler then spoke with her counsel and requested that he provide the information about Fred Kessler's involvement in the complaint against Judge Schudson to Special Investigator Rosen. Attorney Kessler's counsel

---

[9] During the disciplinary hearing, Attorney Kessler specifically indicated that at the time of the June 8, 2004, interview, she had believed or realized that the page with the transaction receipt that was shown to her was connected to the PACER document she had obtained from her colleague in Chicago. She asserted that she did not mention this realization to Special Investigator Rosen because she "did not know what the connection was."

did speak to Special Investigator Rosen that same day and relayed the information that Fred Kessler had told Attorney Kessler—namely, that Fred Kessler had asked a third person to file the complaint against Judge Schudson with the Judicial Commission.

¶ 21. Special Investigator Rosen conducted a second interview of Attorney Kessler on September 1, 2005. This interview was conducted under oath and was transcribed.[10] During this interview, Special Investigator Rosen again asked Attorney Kessler about her claims not to have known who filed the complaint against Judge Schudson or who leaked information about that complaint to the newspaper. Attorney Kessler stated that all of her answers given during the June 8, 2004, interview had been true and correct at the time she had provided them. Specifically, she asserted that at the time of the June 8, 2004, interview, she had not known who had filed or caused to be filed the complaint against Judge Schudson or who had leaked information about that complaint to the *Milwaukee Journal Sentinel*. Moreover, she expressly averred that at the time of the original interview she had no knowledge that her husband had anything to do with the filing of the complaint against Judge Schudson.

¶ 22. Given these facts as found by the referee, the referee considered the two professional misconduct charges set forth in the LRS's complaint. With respect to the question of whether Attorney Kessler had lied about having no knowledge as to whether anyone in her

---

[10] The transcript of this interview was marked as an exhibit for identification purposes at the disciplinary hearing but was not received into evidence. The referee made certain factual findings regarding the content of this interview, however, based on admissions that Attorney Kessler made in her answer to the LRS's complaint.

campaign or anyone she knew had any part in the filing of the complaint against Judge Schudson, the referee concluded that the evidence was most consistent with a conclusion that Fred Kessler had not disclosed his participation in the filing of the complaint to Attorney Kessler and that Attorney Kessler had not, in fact, known that her husband had persuaded a third party to file the complaint. The referee concluded that Attorney Kessler's "stoic" response at the June 8, 2004, interview was most likely due to her suspecting that the documents had come from her campaign and "beginning to connect some dots," but that she did not actually know that the documents attached to Mrs. Moser's complaint had come from someone associated with the campaign.

¶ 23. The referee acknowledged that one could interpret Attorney Kessler's "stoic" response as a realization that her ability to deny any connection with the complaint against Judge Schudson had been undermined because the paper trail could indeed tie her campaign to the complaint, but she nonetheless decided to falsely deny any involvement. The referee further acknowledged that one would ordinarily expect some communication about the filing of an ethics complaint against an opponent in a judicial race between a candidate and her campaign manager, as well as between a candidate and her spouse.

¶ 24. The referee nonetheless concluded that the more reasonable explanation here was that Fred Kessler had acted on his own and had chosen not to disclose his actions to his wife. The referee pointed to Fred Kessler's testimony that he felt Attorney Kessler might disagree with his strategy of using a third party to file a complaint against her opponent during a campaign and so he went with his own judgment. Consequently, the referee concluded that the LRS had

failed to prove a violation of either SCR 20:8.1 or SCR 20:8.4(c) by the required clear, satisfactory, and convincing evidence.

¶ 25. The referee similarly concluded that the LRS had failed to prove the allegations of Count Two to the required standard of proof. He stated that the LRS had presented no evidence to counter Attorney Kessler's denial of knowledge of who had leaked the information about the complaint to the newspaper, other than the "weak inference" that Attorney Kessler must have known about the source of the leak because it would have been beneficial to her campaign. The referee concluded that there were other possibilities regarding the leak of this information that were equally as plausible. First, the leak could have come from Mrs. Moser since she had filed the complaint against Judge Schudson in the first place. Second, the leak could have resulted, directly or indirectly, from Judge Schudson's discussions regarding the complaint with other judges. Under either alternative scenario, there was no particular reason to believe that Attorney Kessler would have known of the source of the leak.

¶ 26. The referee commented that in the end, Judge Schudson had been correct in surmising that the complaint against him to the Judicial Commission had been a campaign tactic that had originated with Attorney Kessler's campaign. That fact, however, had not established that the candidate, Attorney Kessler, had known who had been involved in the filing of the complaint and had falsely denied such knowledge. Because the evidence did not satisfy the LRS's burden of proving a violation by clear, satisfactory, and convincing evidence, the referee recommended that the complaint against Attorney Kessler be dismissed.

¶ 27. Our review of a referee's report and recommendation follows well-established standards of review. We affirm the referee's findings of fact unless they are clearly erroneous. *In re Disciplinary Proceedings Against Inglimo,* 2007 WI 126, ¶ 5, 305 Wis. 2d 71, 740 N.W.2d 125. We review the referee's conclusions of law, however, on a de novo basis. *Id.* Finally, where misconduct is found, we determine the appropriate level of discipline given the particular facts of each case, independent of the referee's recommendation, but benefiting from it. *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶ 28. In this instance, our resolution of this matter directly results from the standard of review. As noted above, we are bound by the referee's factual findings as to what occurred unless those factual findings are shown to be clearly erroneous. In this case, the referee made several express findings of fact that are critical to the resolution of this matter. First, the referee found that Fred Kessler acted on his own when he persuaded Mrs. Moser to file a complaint against Judge Schudson and to attach the PACER document and the Schudson letter to the complaint. The referee also explicitly found that Fred Kessler did not disclose his involvement in the preparation of the complaint against Judge Schudson until after the June 8, 2004, interview in which Attorney Kessler disclaimed knowledge of anyone she knew having played a part in the filing of the complaint. Consequently, the referee further expressly found that Attorney Kessler did not know of the involvement of her husband and campaign manager until she spoke with him following the June 8, 2004, interview.

¶ 29.  Although the LRS argued for contrary findings before the referee, it has not appealed the referee's report and has not contended that the referee's findings are clearly erroneous.

■

¶ 30.  After reviewing the record ourselves, we also do not find a basis in the record to conclude that the referee's findings of fact are clearly erroneous. There was no direct testimony or documentary evidence that clearly undermined Attorney Kessler's claim of a lack of knowledge at the time of her statements during the June 8, 2004, interview. Indeed, the testimony of her husband that he acted on his own and did not disclose his meeting with Mrs. Moser to her supported her claim of ignorance. The only testimony to the contrary was Special Investigator Rosen's testimony that he had concluded during his tenure as the special investigator that Attorney Kessler had lied to him at the June 8, 2004, interview. Special Investigator Rosen, however, did not point to any specific evidence that supported his personal conclusion.

¶ 31.  The only possible grounds to overturn the referee's factual findings, then, are inferences. As the referee acknowledged, one could certainly draw inferences adverse to the ones drawn by the referee based on the relationship of Fred Kessler as Attorney Kessler's husband and campaign manager, and also based on Attorney Kessler's "stoic" response when confronted with the PACER document. In addition to the possible adverse inferences mentioned by the referee, one could also infer that because Attorney Kessler recognized the transaction receipt as coming from the PACER document when that transaction receipt was shown to her during the June 8, 2004, interview, she had to know that someone from her campaign had been involved in

554

the filing of the complaint since she testified that she had provided that document only to her husband/campaign manager and to friends who worked on her campaign. Despite the fact that one could draw these inferences that Attorney Kessler had to know of her husband's (or some other campaign worker's) involvement in the preparation and filing of the complaint against Judge Schudson (and therefore made a false statement when she denied having such knowledge), those inferences are not so strong that they render the referee's inferences unreasonable and his resulting findings of fact clearly erroneous. Under our standard of review, we are therefore obligated to accept the referee's findings of fact, without regard to whether or not members of this court would have reached the same findings if they had been required to make the call in the first instance.

¶ 32. Given the facts as found by the referee, it necessarily follows that the LRS cannot prove by clear, satisfactory, and convincing evidence that Attorney Kessler knowingly made a false statement of fact in connection with a disciplinary investigation (SCR 20:8.1) or engaged in conduct involving dishonesty, fraud, deceit or misrepresentation (SCR 20:8.4(c)). Under the facts of this case, a violation of either rule would require that Attorney Kessler's claimed lack of knowledge was false. Because the referee found that Attorney Kessler did not, in fact, know of her husband's involvement in preparing the complaint against Judge Schudson and did not know who leaked the complaint information to the newspaper, the LRS cannot prove that she knowingly made a false statement of fact or engaged in a misrepresentation. The disciplinary proceeding against her must therefore be dismissed.

¶ 33. IT IS ORDERED that the disciplinary proceeding against Joan A. Kessler is dismissed without costs.

¶ 34. PATIENCE DRAKE ROGGENSACK, J., did not participate.

¶ 35. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I concur, and I agree that in this case, the Lawyer Regulation System cannot prove that Attorney Kessler knowingly made a false statement of fact or engaged in a misrepresentation because of the deference due to the referee's findings of fact. Per curiam, ¶ 32. Specifically, "the referee found that Attorney Kessler did not, in fact, know of her husband's involvement in preparing the complaint against Judge Schudson and did not know who leaked the complaint information to the newspaper." *Id.* As the per curiam notes, however, based on the record, this court could certainly draw inferences that Attorney Kessler made a false statement when she denied having such knowledge, but we are nevertheless "obligated to accept the referee's findings of fact, without regard to whether or not members of this court would have reached the same findings" in the first instance. *Id.*, ¶ 31. As Justice Prosser, Justice Roggensack, and Justice Ziegler noted in the *Gableman* decision, *see In re Judicial Disciplinary Proceedings Against Gableman*, 2010 WI 62, ¶ 52, 325 Wis. 2d 631, 784 N.W.2d 631, this court is to observe the findings of facts or stipulation of facts as they exist in the record. As Justice Prosser, Justice Roggensack, and Justice Ziegler further observed in the *Gableman* decision, it is not within our province to call for a jury trial or a further fact-finding process. *See id.*, ¶ 54 n.24. I am pleased that we now have unanimous agreement on our proper role in such matters.

¶ 36. Simply stated, the per curiam's analysis in this case is consistent with the analysis of Justice Prosser, Justice Roggensack, and Justice Ziegler in the

*Gableman* decision. *See id.*, ¶ 52 ("On review, we employ the rules applicable to civil proceedings and we accept the Panel's findings of fact unless they are clearly erroneous. No party contends the Panel's fact findings are clearly erroneous or that there is any need for further fact-finding."). However, the per curiam's analysis is inconsistent with the writing of Chief Justice Abrahamson, Justice Bradley, and Justice Crooks in the *Gableman* decision, in which those three justices disregarded the Judicial Conduct Panel's findings of fact and the parties' stipulation of facts.[1] *See In re Judicial Disciplinary Proceedings Against Gableman,* 2010 WI 61, ¶¶ 37, 46, 325 Wis. 2d 579, 784 N.W.2d 605. I am pleased to see that here, Chief Justice Abrahamson, Justice Bradley, and Justice Crooks afford proper deference to the facts before this court. The level of deference which we apply to the referee's findings of fact in this case should be consistent with the deference we owed the Judicial Conduct Panel's findings of fact and the factual stipulation in the *Gableman* decision. *See Gableman,* 325 Wis. 2d 631, ¶ 52.

¶ 37. For the foregoing reason, I respectfully concur.

---

[1] An example is instructive. In this case, the per curiam accepts the referee's finding of fact that Attorney Kessler did not know of her husband's involvement in preparing the complaint against Judge Schudson and did not know who leaked the complaint information to the newspaper. Per curiam, ¶ 30. Notably, the per curiam accepts that finding of fact despite Special Investigator Rosen's conclusion that Attorney Kessler lied to him during the June 8, 2004, interview when she denied having such knowledge. *Id.* Conversely, in the *Gableman* case, Chief Justice Abrahamson, Justice Bradley, and Justice Crooks called for further fact-finding even though there was no dispute that the subject language was true. *See In re Judicial Disciplinary Proceedings Against Gableman,* 2010 WI 61, ¶¶ 19, 37, 325 Wis. 2d 579, 784 N.W.2d 605.

¶ 38. MICHAEL J. GABLEMAN, J. (*concurring*). I agree with and fully adopt the conclusions of Justice Zeigler's concurrence. This court should apply an appropriate level of deference to the referee's findings of fact by observing the findings of fact or stipulation of facts as they exist in the record. As the per curiam notes, we are "obligated to accept the referee's findings of fact, without regard to whether or not members of this court would have reached the same findings" in the first instance. Per curiam, ¶ 31. Regardless of whether this court could have drawn inferences that Attorney Kessler made a false statement when she denied having knowledge of her husband's involvement in preparing the complaint against Judge Schudson, we are bound by the referee's findings of fact unless they have been shown to be clearly erroneous. I agree that in this case the Lawyer Regulation System failed to meet that standard. I write separately from Justice Zeigler's concurrence merely to avoid even the appearance of commenting directly or indirectly on a case in which I was a party.