In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Frederick P. KESSLER, Attorney at Law:

OFFICE OF LAWYER REGULATION,
Complainant-Appellant,

v.

Frederick P. KESSLER, Respondent-Respondent.

Supreme Court

No. 2008AP834–D. *Submitted on briefs February 8, 2010.
—Decided October 14, 2010.*

2010 WI 120

(Also reported in 789 N.W.2d 744.)

¶ 1. PER CURIAM. The Office of Lawyer Regulation (OLR) has appealed from a referee's report and

recommendation finding that the OLR failed to satisfy its burden of proof that Attorney Frederick P. Kessler violated SCR 20:8.4(a) and (c).[1]

¶ 2.  OLR's appeal raises three issues:

- Does SCR 20:8.4(c) require that an attorney's untrue or deceptive statement be used to defraud another in order to be actionable?

- Was Attorney Kessler's deceptive statement privileged under the First Amendment to the United States Constitution?

- If a violation is found, what is the appropriate discipline?

¶ 3.  This court will affirm a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. We adopt the referee's findings of fact. Although we disagree with the referee's conclusion of law that in order to constitute misconduct under SCR 20:8.4(c) a deceptive statement must be used to defraud another, we nevertheless agree with the referee that the OLR failed to satisfy its burden of proof that Attorney Kessler violated the rule. Consequently, we dismiss the proceeding.[2]

---

[1] SCR 20:8.4(a) and (c) state it is professional misconduct for a lawyer to:  "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;" and "(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[2] In most cases the dismissal of a proceeding occurs by unpublished order. Because the conduct at issue here occurred

¶ 4. Attorney Kessler was admitted to practice law in Wisconsin in 1966 and practices in Milwaukee. He is also currently a member of the Wisconsin legislature. He was first elected to public office in 1960 and has participated in campaigns for the Wisconsin State Assembly, the Milwaukee County Circuit Court, and the United States House of Representatives.

¶ 5. In the spring 2004 election for District I Court of Appeals, Judge Charles Schudson was the incumbent seeking re-election. Attorney Kessler's wife, Joan Kessler, who was then in private practice with the Milwaukee law firm of Foley & Lardner, declared her candidacy for the position and ran against Judge Schudson.

¶ 6. On July 1, 2002, Judge Schudson wrote a letter (the Schudson letter) to Judge Charles Clevert, Jr., district judge for the U.S. District Court for the Eastern District of Wisconsin, in relation to the sentencing of Attorney Charles Hausmann for a criminal conviction. Judge Schudson's letter was unsolicited and recommended leniency in sentencing.

¶ 7. Attorney Kessler became aware of the Schudson letter and believed it might constitute a violation of SCR 60.03(2).[3] He asked Joan Kessler to obtain a copy of the letter because he thought it would provide Joan

---

in the course of a judicial campaign conducted by the respondent's spouse, Joan F. Kessler, and because Ms. Kessler is now a sitting judge, we deem it appropriate to issue our decision in the form of a published per curiam decision in order to provide a full explanation for the decision we reach.

[3] SCR 60.03(2) reads:

> A judge may not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment. A judge may not lend the prestige of judicial office to advance the private interests of the

Kessler an advantage in the campaign if Judge Schudson were disciplined. Joan Kessler obtained a copy of the Schudson letter and other information about Hausmann's case through a colleague in Foley & Lardner's Chicago office, who used the firm's PACER account to obtain at least some of the information. The PACER system is a federal internet-based service that allows individuals or law firms to access documents and other information from federal judicial case files.

¶ 8.   On October 25, 2003, Attorney Kessler spoke to Mary Moser, the widow of former District I Court of Appeals Judge William Moser, at a memorial service for Judge Moser. Mrs. Moser was a supporter of Joan Kessler's candidacy and had previously on her own initiative telephoned the Kessler residence to indicate her support and to offer assistance to Joan Kessler's campaign. While at the memorial service, Attorney Kessler invited Mrs. Moser to lunch.

¶ 9.   On October 27, 2003, Attorney Kessler telephoned Mrs. Moser to schedule a luncheon meeting for the purpose of asking her if she would be willing to file a complaint against Judge Schudson with the Wisconsin Judicial Commission based on the letter Judge Schudson wrote on Attorney Hausmann's behalf. Mrs. Moser agreed to meet Attorney Kessler for lunch. On October 28, 2003, Attorney Kessler met with Mrs. Moser at a Milwaukee restaurant. He gave her copies of the Schudson letter and the docket sheet from the Hausmann case, which indicated that the letter was a public document, along with a copy of portions of the judicial code. He also provided her with a draft of a

judge or of others or convey or permit others to convey the impression that they are in a special position to influence the judge. A judge may not testify voluntarily as a character witness.

letter complaint to the Judicial Commission. Attorney Kessler told Mrs. Moser that he believed Judge Schudson had violated the judicial code by writing the letter on Hausmann's behalf, and he asked if she would be willing to file a complaint with the Judicial Commission against Judge Schudson.

¶ 10. In soliciting Mrs. Moser to file a complaint, Attorney Kessler sought to remain anonymous. At the lunch meeting, Mrs. Moser asked Attorney Kessler how she could explain how she learned about the Schudson letter if she were asked. According to a statement Mrs. Moser made to a special investigator, Attorney Kessler said she could just tell people she had heard it at a cocktail party and that it didn't matter because the letter was a public record.[4]

¶ 11. Mrs. Moser initially told Attorney Kessler that she wanted to think about filing the complaint. After discussing it with her family and a friend who had served on the Judicial Commission, she told Attorney Kessler she would file the complaint. She edited the draft letter that Attorney Kessler had provided her and filed a complaint against Judge Schudson with the Judicial Commission, attaching copies of the Schudson letter and the PACER document.

¶ 12. The Judicial Commission notified Judge Schudson of the complaint on January 23, 2004. On

---

[4] Mrs. Moser did not testify at the hearing before the referee so her statement to the special investigator is the only evidence in the record of how Attorney Kessler responded to her question about how she should respond if someone asked how she had learned about the letter. The "cocktail party" reference was made in response to a leading question posed by the special investigator. Attorney Kessler says he has no specific recollection of making the "cocktail party" comment but he also said he had no reason to believe that Mrs. Moser would testify falsely.

January 26, 2004, Judge Schudson responded, acknowledged that the letter had violated SCR 60.03(2), and apologized.

¶ 13.  On March 8, 2004, a column in the *Milwaukee Journal Sentinel* reported on the Schudson letter and the complaint that had been filed with the Judicial Commission. Because Judge Schudson had not waived his right to confidentiality in writing to the Judicial Commission, the filing of the complaint and his response were supposed to be confidential under Wis. Stat. § 757.93 (2003–04).[5]

---

[5] Wisconsin Stat. § 757.93 (2003–04) provided:  Confidentiality of proceedings.

(1)(a) All proceedings under ss. 757.81 to 757.99 relating to misconduct or permanent disability prior to the filing of a petition or formal complaint by the commission are confidential unless a judge or circuit or supplemental court commissioner waives the right to confidentiality in writing to the commission. Any such waiver does not affect the confidentiality of the identity of a person providing information under par. (b).

(b) Any person who provides information to the commission concerning possible misconduct or permanent disability may request that the commission not disclose his or her identity to the judge or circuit or supplemental court commissioner prior to the filing of a petition or a formal complaint by the commission.

(2) If prior to the filing of a formal complaint or a petition an investigation of possible misconduct or permanent disability becomes known to the public, the commission may issue statements in order to confirm the pendency of the investigation, to clarify the procedural aspects of the disciplinary proceedings, to explain the right of the judge or circuit or supplemental court commissioner to a fair hearing without prejudgment, to state that the judge or circuit or supplemental court

¶ 14. The election for the District I Court of Appeals seat occurred on April 6, 2004. In the final weeks before the election, Joan Kessler's campaign ran radio and television ads referring to the complaint filed with the Judicial Commission against Judge Schudson. The ads stated the Judicial Commission was investigating whether Judge Schudson had violated the judicial code by "using his influence to try and help a convicted felon." Joan Kessler prevailed in the election.

commissioner denies the allegations, to state that an investigation has been completed and no probable cause was found or to correct public misinformation.

(3) The petition or formal complaint filed under s. 757.85 by the commission and all subsequent hearings thereon are public.

(4) This section does not preclude the commission, in its sole discretion, from:

(a) Referring to the director of state courts information relating to an alleged delay or an alleged temporary disability of a judge or circuit or supplemental court commissioner.

(b) Referring to an appropriate law enforcement authority information relating to possible criminal conduct or otherwise cooperating with a law enforcement authority in matters of mutual interest.

(c) Referring to an attorney disciplinary agency information relating to the possible misconduct or incapacity of an attorney or otherwise cooperating with an attorney disciplinary agency in matters of mutual interest.

(d) Disclosing to the chief justice or director of state courts information relating to matters affecting the administration of the courts.

(e) Issuing an annual report under s. 757.97.

¶ 15. The complaint against Judge Schudson was resolved on June 26, 2004, by the Judicial Commission issuing a letter notifying him that the complaint was dismissed "with an expression of warning."

¶ 16. After the election Mrs. Moser was contacted by the special investigator retained to investigate a grievance that Judge Schudson had filed against Joan Kessler.[6] Mrs. Moser contacted Attorney Kessler about the contact from the special investigator and Attorney Kessler told her to tell the truth.

¶ 17. On April 4, 2008, the OLR filed a complaint against Attorney Kessler alleging two counts of misconduct. The first count alleged that by inducing and assisting Mrs. Moser to file the complaint with the Judicial Commission for the purpose of concealing that he and/or the Joan Kessler campaign was the true source of the information and impetus for the Judicial Commission complaint, and by advising Mrs. Moser that if asked she should falsely state she learned about the matter at a cocktail party, Attorney Kessler violated SCR 20:8.4(a) and (c).

¶ 18. Count Two of the complaint alleged an additional violation of SCR 20:8.4(a) and (c). This count

---

[6] An attorney disciplinary complaint was later filed against Joan Kessler by the Lawyer Regulation System. The complaint alleged that Joan Kessler had falsely told a special investigator that to her knowledge neither she nor anyone in her campaign nor anyone she knew had any part in filing the complaint against Judge Schudson with the Judicial Commission. The complaint also alleged that Joan Kessler had falsely told a special investigator that she did not know who had leaked information about the complaint against Judge Schudson to the *Milwaukee Journal Sentinel*. The disciplinary proceeding against Joan Kessler is being resolved in a separate opinion issued today. *In re Disciplinary Proceedings Against Kessler*, 2010 WI 121 (Case No. 2009AP1529–D).

arose out of an e-mail invitation to a fundraiser sent by the Joan Kessler campaign. The Joan Kessler campaign Website showed a copy of a solicitation letter containing only Joan Kessler's signature block. Four people calling themselves "Friends of Judge Schudson" sent a letter to Joan Kessler saying that her campaign Website had included her personal solicitation of financial contributions, contrary to SCR 60.06(4).[7] In response, Attorney Kessler drafted an affidavit for the signature of Joan Kessler's Website developer saying that the claim was untrue. The *Milwaukee Journal Sentinel* reported the Joan Kessler campaign alleged that Judge Schudson's campaign had tampered with the Kessler campaign Website to make it look as though Joan Kessler had

[7] SCR 60.06(4) reads as follows: Solicitation and Acceptance of Campaign Contributions.

A judge, candidate for judicial office, or judge-elect shall not personally solicit or accept campaign contributions. A candidate may, however, establish a committee to solicit and accept lawful campaign contributions. The committee is not prohibited from soliciting and accepting lawful campaign contributions from lawyers, other individuals or entities even though the contributor may be involved in a proceeding in which the judge, candidate for judicial office, or judge-elect is likely to participate. A judge or candidate for judicial office or judge-elect may serve on the committee but should avoid direct involvement with the committee's fundraising efforts. A judge or candidate for judicial office or judge-elect may appear at his or her own fundraising events. When the committee solicits or accepts a contribution, a judge, candidate for judicial office, or judge-elect should also be mindful of the requirements of SCR 60.03 and 60.04(4); provided, however, that the receipt of a lawful campaign contribution shall not, by itself, warrant judicial recusal.

violated an ethics rule. The parties subsequently stipulated that Count Two of the complaint be dismissed.

¶ 19.   Jonathan V. Goodman was appointed referee in the matter. A hearing was held before the referee on August 19, 2009. The referee issued his report and recommendation on September 16, 2009. The referee concluded that Attorney Kessler's directive to Mrs. Moser that, upon inquiry, she say that she heard about Judge Schudson's misconduct at a cocktail party was not dishonest, fraudulent, or a misrepresentation. The referee concluded that the directive was deceptive in that it was not true. However, the referee adopted the definition of "deceit" as contained in *Webster's Third New International Dictionary,* as cited in *State v. Dalton,* 98 Wis. 2d 725, 298 N.W.2d 398, (Ct. App. 1980):   "[T]he act or practice of deceiving (as by falsification, concealing or cheating) . . . any trick, collusion, contrivance, false representation, or underhand practice *used to defraud another.*" (Emphasis supplied by referee.) *Id.* at 739.

¶ 20.   The referee concluded since there was no evidence that Attorney Kessler's directive to Mrs. Moser was actually used to defraud another, the OLR failed to prove the allegations in Count One of the complaint by clear, satisfactory, and convincing evidence. Accordingly, the referee recommended that Count One of the complaint be dismissed.

¶ 21.   The OLR has appealed, arguing that Attorney Kessler did violate SCR 20:8.4(a) and (c) when he advised Mrs. Moser to lie in order to conceal his role in supplying her information and in drafting the complaint for her to file with the Judicial Commission. The OLR is not challenging the referee's findings of fact, but rather is challenging the referee's legal conclusion that Attorney Kessler's statement to Mrs. Moser did not

constitute a violation of SCR 20:8.4(a) and (c). The OLR asserts that the referee's legal conclusion is predicated on an erroneous understanding of the law.

¶ 22. The OLR argues that the referee erred by deconstructing the verbiage of SCR 20:8.4(c), and in doing so, adding another element to the rule, i.e., that a deceitful statement must be acted upon, in this case by a third person. The OLR argues that neither the language of the rule, nor cases construing it, suggest that an attorney's deceptive statement must be used to defraud another in order to be actionable under SCR 20:8.4(c). The OLR asks this court to reverse the referee's legal conclusion that Attorney Kessler did not violate the rule by telling Mrs. Moser to lie in order to conceal his involvement in filing the complaint against Judge Schudson.

¶ 23. Attorney Kessler asserts the referee correctly recommended dismissal of Count One of the OLR's complaint based on the absence of evidence that he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation within the meaning of SCR 20:8.4(c). Attorney Kessler says although SCR 20:8.4(c) is a kind of catch-all rule that extends beyond conduct constituting the practice of law, it does not reach every utterance made in every sphere of an attorney's life. He says the referee was correct in concluding that although characterizing the lunch with Mrs. Moser as a "cocktail party" was not true, the OLR proved no violation of the rule. Attorney Kessler says the "cocktail party" comment was nothing more than a suggestion as to how Mrs. Moser might deflect a casual question about the source of her knowledge. He says similar to attributing information to "a little birdie" or "the grapevine," the "cocktail party" comment is an example of how people

innocently deflect questions they would rather avoid in a manner that is less awkward than a flat refusal to answer.

¶ 24. Attorney Kessler also argues that the First Amendment protected his anonymous participation in a meritorious complaint about Judge Schudson, a public official. Attorney Kessler argues the United States Supreme Court has repeatedly held that criticism of judges and other public officials is entitled to the highest level of protection. *See, e.g., Landmark Commc'ns, Inc. v. Va.,* 435 U.S. 829, 838–39 (1978); *Buckley v. Valeo,* 424 U.S. 1, 14–15 (1976). He notes the Supreme Court has also held that the intent to conceal identity in the exercise of political speech is protected. He argues anonymity has long been recognized as an important aspect of encouraging criticism of officials and candidates.

¶ 25. The OLR responds that the First Amendment does not shield false statements, and if Attorney Kessler's statement to Mrs. Moser is properly construed as a suggestion to lie, then it is not protected by the First Amendment.

¶ 26. The referee's findings of fact have not been shown to be clearly erroneous, and we therefore adopt them. Although we disagree with the referee's legal conclusion that in order to constitute misconduct under SCR 20:8.4(c) a deceptive statement must be used to defraud another, we nevertheless agree with the referee's ultimate conclusion that the OLR failed to meet its burden of proving that Attorney Kessler's comment to Mrs. Moser violated the rule.

¶ 27. We find no support for the referee's conclusion that a deceitful statement must actually defraud someone before it will be found to violate SCR 20:8.4(c).

*State v. Dalton,* the court of appeals decision cited by the referee in support of this proposition, is not on point. Dalton was convicted of first-degree murder, kidnapping by deceit, and first-degree sexual assault. One of the issues raised on appeal was whether the evidence was sufficient to support the conviction for kidnapping by deceit. Evidence presented at Dalton's trial showed that he represented he would transport his victim to the unemployment compensation office. While Dalton did not challenge the other elements of the kidnapping charge, he argued there was insufficient evidence to show the kidnapping was carried out with deceit since there was no proof that he made express or implied representations to the victim. The court of appeals rejected this argument, saying that deceit necessarily implies that the victim be unaware that he or she is being kidnapped.

¶ 28. The court of appeals said, "Limiting proof of deceit to express or implied misrepresentations would offer no protection to the victim who was artfully deceived by a person who lured and trapped his victim without resort to misrepresentation." *Dalton,* 98 Wis. 2d at 740. Because the *Dalton* court was defining "deceit" in the context of a criminal statute, that case is inapposite here. There is no language in SCR 20:8.4(c) or in prior attorney regulatory cases that would engraft onto the rule a requirement that a deceitful statement must be actually used to defraud someone before a rule violation may be found.

■

¶ 29. Although we disagree with the referee's interpretation of the rule, we nonetheless agree with the referee that Attorney Kessler's "cocktail party" com-

ment did not constitute a violation of SCR 20:8.4(c).[8] Attorney Kessler's statement to Mrs. Moser did not itself contain a misrepresentation. For example, Attorney Kessler did not tell Mrs. Moser that he had learned of the Schudson letter at a cocktail party or that Judge Schudson had telephoned Judge Clevert as well as wrote a letter.

¶ 30. What Attorney Kessler did was to suggest that Mrs. Moser make a misrepresentation in the future if confronted with a particular situation. There is no evidence in the record, however, that (1) Mrs. Moser was ever confronted with the question of how she learned of the Schudson letter, and (2) that she ever told anyone that she had heard about the Schudson letter at a cocktail party. Had Mrs. Moser actually made the statement pursuant to Attorney Kessler's suggestion, we would be confronted by a different case.

¶ 31. This does not mean that we are, in effect, adopting the referee's interpretation that someone must be defrauded in order for there to be a violation of SCR 20:8.4(c). The concept of someone being defrauded includes the requirement that the hearer relied on a false statement and took action (or refrained from taking action) that led to the person incurring damage

---

[8] We note that the OLR has not alleged that any of Attorney Kessler's other statements to Mrs. Moser were misrepresentations. For example, there is no claim that Attorney Kessler misrepresented to Mrs. Moser what Judge Schudson had done or what the applicable provision of the Code of Judicial Conduct required. Likewise, the OLR has not contended that Attorney Kessler violated any ethical rule by soliciting Mrs. Moser to file the complaint rather than filing it himself. We do not find it laudatory that Attorney Kessler attempted to hide behind a third person for political reasons, but there is no claim of an ethical violation in that regard presented to us here.

573

of some sort. The rule makes no reference to the impact of a misrepresentation on a hearer of the false statement.

¶ 32. The rule does, however, require that there be, at a minimum, a dishonest or deceitful statement or a misrepresentation. That did not occur in this case. Attorney Kessler's statement suggested that Mrs. Moser make a misrepresentation in the future, but it did not itself make a false statement of fact. Moreover, Mrs. Moser apparently did not follow through with Attorney Kessler's suggestion and she never made any false statement of fact about the source of her knowledge. Thus, we cannot find a violation of SCR 20:8.4(c) under the particular facts of this case. In addition, since we find that the OLR failed to establish a violation of any supreme court rule, we do not address Attorney Kessler's First Amendment argument.

¶ 33. Our application of the requirements of the rule, however, should not be interpreted to be an endorsement of Attorney Kessler's behavior. Suggesting that someone not tell the truth is never laudable. If Attorney Kessler did not want Mrs. Moser to divulge his name, he could have simply asked her not to answer any question about the source of her knowledge of the Schudson letter. He should have advised her that if she chose to respond to a question about the source of her knowledge, she should reveal his identity.

¶ 34. IT IS ORDERED that the disciplinary proceeding against Frederick P. Kessler is dismissed without costs.

¶ 35. ANNETTE KINGSLAND ZIEGLER, J. (*concurring*). I concur and agree that in this case, we are bound by the referee's findings of fact because they have not been shown to be clearly erroneous. Per

curiam, ¶ 26. As Justice Prosser, Justice Roggensack, and Justice Ziegler noted in the *Gableman* decision, *see In re Judicial Disciplinary Proceedings Against Gableman,* 2010 WI 62, ¶ 52, 325 Wis. 2d 631, 784 N.W.2d 631, this court is to observe the findings of facts or stipulation of facts as they exist in the record. As Justice Prosser, Justice Roggensack, and Justice Ziegler further observed in the *Gableman* decision, it is not within our province to call for a jury trial or a further fact-finding process. *See id.,* ¶ 54 n.24. I am pleased that we now have unanimous agreement on our proper role in such matters.

¶ 36. Simply stated, the per curiam's analysis in this case is consistent with the analysis of Justice Prosser, Justice Roggensack, and Justice Ziegler in the *Gableman* decision. *See id.,* ¶ 52 ("On review, we employ the rules applicable to civil proceedings and we accept the Panel's findings of fact unless they are clearly erroneous. No party contends the Panel's fact findings are clearly erroneous or that there is any need for further fact-finding."). However, the per curiam's analysis is inconsistent with the writing of Chief Justice Abrahamson, Justice Bradley, and Justice Crooks in the *Gableman* decision, in which those three justices disregarded the Judicial Conduct Panel's findings of fact and the parties' stipulation of facts. *See In re Judicial Disciplinary Proceedings Against Gableman,* 2010 WI 61, ¶¶ 37, 46, 325 Wis. 2d 579, 784 N.W.2d 605. I am pleased to see that here, Chief Justice Abrahamson, Justice Bradley, and Justice Crooks afford proper deference to the facts before this court. The level of deference which we apply to the referee's findings of fact in this case should be consistent with the deference we owed the Judicial Conduct Panel's findings of fact

and the factual stipulation in the *Gableman* decision. *See Gableman,* 325 Wis. 2d 631, ¶ 52.

¶ 37. For the foregoing reason, I respectfully concur.

¶ 38. I am authorized to state that Justice PATIENCE DRAKE ROGGENSACK joins this concurrence.

¶ 39. MICHAEL J. GABLEMAN, J. *(concurring).* I agree with and fully adopt the conclusions of Justice Zeigler's concurrence. We are bound by the referee's findings of fact in this case because they have not been shown to be clearly erroneous. I write separately merely to avoid even the appearance of commenting directly or indirectly on a case in which I was a party.